## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| CORINTH PELLETS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 1:20-cv-00082-NT |
| | ) | |
| ANDRITZ, INC., d/b/a ANDRITZ | ) | |
| FEED AND BIOFUEL, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Before me is the Defendant's motion to dismiss three counts of the Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. ("**Def.'s Mot.**") (ECF No. 17). For the reasons stated below, the motion to dismiss is **DENIED**.

## BACKGROUND

In 2013, Plaintiff Corinth Pellets, LLC ("**Corinth**"), acquired a wood fuel pellet mill (the "**mill**") in Corinth, Maine. First Am. Compl. ("**FAC**") ¶¶ 1, 6 (ECF No. 11). Corinth also acquired the equipment within the mill, including three 26LM pellet presses (the "**original presses**"), all of which were manufactured by Defendant Andritz, Inc. ("**Andritz**"). FAC ¶¶ 6, 7, 57. In May of 2014, Andritz Field Service Technician Dennis Schwenk inspected the original presses and declared them to be safe and ready for operation. FAC ¶¶ 11, 12.

In 2014, Corinth purchased a fourth 26LM pellet press from Andritz ("**Press 4**"). FAC ¶ 8. From 2015 until September 2018, Corinth purchased parts for the four

pellet presses (the "**presses**") from Andritz and also relied on Andritz to recondition existing parts in the presses. FAC ¶ 14.

At the end of August of 2018, a second Andritz Field Service Technician, Dannie Hasselbring, inspected the presses and declared them to be fit for operation. FAC ¶¶ 24, 25. The Plaintiff alleges that, at the time of the May 2014 inspection, Andritz was aware that its 26LM pellet presses were prone to overheating and that, at the time of the August 2018 inspection, Andritz was aware that other pellet mill operators had reported such overheating as well as subsequent fires. FAC ¶¶ 13, 28. The Plaintiff also alleges that Andritz designed and installed a temperature sensor and alarm inside newly-manufactured 26LM pellet presses but never informed Corinth of this temperature gauge option. FAC ¶¶ 51, 52. The Plaintiff does not allege that Mr. Schwenk or Mr. Hasselbring (the "**technicians**") was personally aware of the presses' alleged susceptibility to overheating.

In September of 2018, the mill suffered a catastrophic fire that forced the mill to cease operations. FAC ¶ 19. An investigation determined that the fire originated in Press 4 and had resulted from mechanical failure. FAC ¶¶ 45, 47.

The Plaintiff filed the Complaint in March of 2020, Compl. (ECF No. 1), and subsequently filed the FAC. The FAC asserts five claims under Maine law: (1) negligence, (2) strict liability, (3) breach of the implied warranty of merchantability, (4) fraud, and (5) punitive damages.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the "legal sufficiency" of a complaint. *Me. Educ. Ass'n Benefits Tr. v. Cioppa*, 842 F. Supp. 2d 373, 376 (D. Me. 2012). The general rules of pleading require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That "short and plain statement" need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and alterations omitted); *see Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (complaint need not contain "an exposition of [plaintiff's] legal argument," nor must it "pin plaintiff's claim for relief to a precise legal theory").

To determine whether a complaint states a claim, courts in the First Circuit follow a two-step analysis. First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 717 (1st Cir. 2014) (internal quotations omitted). Then, taking all well-pleaded facts as true and "drawing all reasonable inferences in plaintiff's favor," the court must determine whether the complaint "plausibly narrate[s] a claim for relief." *Id.* (internal quotations omitted). "Plausible" means "more than merely possible" but does not require all facts necessary to establish a prima facie case. *Id.* at 717–18 (internal quotations omitted). Although a plaintiff need not establish a prima facie case of his or her claim at the pleading stage, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Rodríguez-Reyes v. Molina-*

3

*Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013). Distinguishing sufficient from insufficient pleadings is a "context-specific task." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"Cases alleging fraud . . . constitute an exception to this general" framework. *See Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004). To maintain a claim for fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The First Circuit has explained that "the circumstances to be stated with particularity under Rule 9(b) generally consist of 'the who, what, where, and when' " of the claim. *Dumont v. Reily Foods Co.*, 934 F.3d 35, 38 (1st Cir. 2019) (internal quotations omitted and alteration adopted). The complaint must also "identify[ ] the basis for inferring scienter." *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009). That is, it must set forth specific facts allowing a reasonable inference that a defendant knew that a statement was materially false or misleading. *Id.* This heightened pleading requirement applies to state law fraud claims brought in federal court, including fraud and fraudulent concealment. *Id.*; *Stine v. Bank of Am., N.A.*, No. 2:16-CV-109-GZS, 2016 WL 5135607, at *4 (D. Me. Sept. 21, 2016).

## DISCUSSION

The Defendant argues that the Plaintiff's breach of the implied warranty of merchantability, fraud, and punitive damages claims must be dismissed for failure to state a claim. Def.'s Mot. 2. I discuss each count in turn.

## I.   Fraud

The Defendant argues that the Plaintiff fails to state a claim for fraud because the FAC does not sufficiently allege that Andritz made false statements to, or actively concealed the truth from, Corinth. Def.'s Mot. 7–15. The Plaintiff responds that the technicians falsely stated that the presses were safe and ready for use and that Andritz concealed that the presses were prone to overheating. Pl.'s Opp'n to Def.'s Mot. to Dismiss Counts III, IV and V of First Am. Compl. ("**Pl.'s Opp'n**") 2–5 (ECF No. 18).

Under Maine law, a fraud claim exists where a defendant (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard for its truth (4) to induce another to act or refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation and acts upon it to his or her detriment. *Francis v. Stinson*, 760 A.2d 209, 217 (Me. 2000). An omission or failure to disclose can also serve as a predicate for a fraud claim if the plaintiff can demonstrate either active concealment of the truth or the existence of a special relationship between the plaintiff and the defendant that imposes a duty of disclosure on the defendant. *Kezer v. Mark Stimson Assocs.*, 742 A.2d 898, 905 (Me. 1999).[1]

The FAC alleges each of the components necessary to sustain a fraud claim: the who (the technicians), the what (the statements that the presses were safe and

---

[1]   The Plaintiff never argues that there existed any special relationship between the parties here, so only the issue of active concealment is relevant.

ready for use), the where (at the mill), the when (in May of 2014 and in August of 2018), and a basis for inferring scienter (Andritz's alleged knowledge that the presses were subject to overheating).

In support of its position, the Defendant primarily relies on two cases from the Law Court, both decided at the summary judgment stage and, for that reason, unhelpful to the Defendant. Def.'s Mot. 10–12. In both cases, the Law Court found for the defendants because, after ample opportunity for discovery, the plaintiffs had failed to present evidence of the falsity of the allegedly fraudulent statements.[2]

The Defendant also maintains that the Plaintiff's fraud claim should be dismissed because the Plaintiff has not sufficiently alleged that Andritz intended for Corinth to rely on Andritz's misstatements or nondisclosure. Def.'s Mot. 13–14. The Defendant postulates that it was in Andritz's interest to be forthcoming about any defects in its products because this would require additional parts and repairs, thereby generating more business for Andritz. Def.'s Mot. 13–14. Thus, the argument goes, Andritz never intended to induce reliance when its technicians stated that the presses were safe because notifying Corinth that the presses were faulty would have generated additional business for Andritz. Def.'s Mot. 13–14.

---

[2]     In the first case, real estate purchasers sued their realtor and the former homeowners, alleging a failure to disclose that the property's well contained contaminated water, but summary judgment was upheld because the record contained no evidence that the well was actually contaminated or that the defendants had concealed any material information from the purchasers. *Kezer v. Mark Stimson Assocs.*, 742 A.2d 898, 900–01, 905 (Me. 1999). In the second case, involving the purchase of a used snowmobile and representations that the snowmobile "runs nice," the Law Court affirmed a grant of summary judgment on a claim of fraud and misrepresentation because there was no record evidence that the retailer or its agents made any false representation, much less one that was known to be false or made with reckless disregard of its falsity. *Guiggey v. Bombardier*, 615 A.2d 1169, 1171, 1173 (Me. 1992).

While this is one permissible inference from the pleaded facts, an equally permissible inference is that if Andritz had been forthright about the defects in its products, Corinth may have grown dissatisfied with Andritz's products and/or services and may have instead turned to a competitor. It is the latter inference that must be drawn at this stage. *See Carrero-Ojeda*, 755 F.3d at 717. Corinth has sufficiently alleged that it relied on Andritz's misstatements and/or concealment when it continued to purchase Andritz's products and services.

The Defendant next asserts, in reply, that the parties who stated that the presses were safe (the technicians) are different from the party allegedly having knowledge that the presses were dangerous (Andritz). In particular, Andritz relies on the Restatement's admonition that knowledge of a principal cannot generally be imputed to an agent. Def.'s Reply to Pl.'s Opp'n to its Mot. to Dismiss Corinth's First Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) 1–2 (ECF No. 19) (citing Restatement (Third) of Agency § 5.02 cmt. b, § 5.03 cmt. d (Am. Law Inst. 2006)).

This tenet is significantly less relevant when it is the *principal* being sued, as here, rather than the agent. *See In re Carroll*, 400 B.R. 497, 502 (Bankr. N.D.W. Va. 2008) ("This [lack of imputation] means that an agent is legally protected from the consequences of facts made known to the principal . . . ."); Restatement (Third) of Agency § 5.03 cmt. g ("This protects the agent from the legal consequences of facts that only the principal knows or has reason to know."). Instead, what matters when the principal is being sued are the obligations that the principal (Andritz) owes to a third party (Corinth) when acting through an agent (the technicians). These

7

obligations exist independently of the knowledge that is possessed by, or imputed to, the agent.

In order to fulfill its responsibilities to a third party, a principal sometimes has a duty to inform its agent fully. *See* Restatement (Third) of Agency § 5.03 cmt. g ("A principal may be subject to liability to a third party if the principal withholds relevant information from an agent, knowing that the agent will materially misstate facts to a third party as a result."). If an agent should know a fact in order to discharge his or her duties properly, a principal's failure to inform the agent of that fact may be a breach of the principal's duty owed to a third party. *Id.* § 5.01 cmt. b; *id.* § 5.03 cmt. b, illus. 4; *see In re Manzanares*, 345 B.R. 773, 793 (Bankr. S.D. Fla. 2006); *Essex v. Getty Oil Co.*, 661 S.W.2d 544, 550–51 (Mo. Ct. App. 1983) ("The fact that the person used as an agent to convey the representation is innocent does not relieve the party charged with fraud.").

Taking the allegations in the FAC as true leads to two reasonable inferences about Andritz's conduct: either (1) Andritz knew that the presses were subject to overheating and informed the technicians of this possibility, or (2) Andritz knew that the presses were subject to overheating but failed to provide this important information to the technicians.[3] If the first were true, Andritz would have made an

---

[3]      It is also possible that Andritz informed the technicians about the overheating problem but that the technicians themselves decided not to disclose this information to Corinth. But Andritz has not raised this defense. In any event, the allegations in the First Amended Complaint ("**FAC**") support the idea that the technicians acted with apparent authority when inspecting the presses. *See* Restatement (Third) of Agency § 5.02(2) (Am. Law Inst. 2006) ("A notification given by an agent is effective as notification given by the principal if the agent has actual or apparent authority to give the notification, unless the person who receives the notification knows or has reason to know that the agent is acting adversely to the principal . . . .").

affirmative misstatement (i.e., a false representation of a material fact) via its agents. If the second were true, Andritz would have concealed necessary information from its technicians and thereby breached its duty to Corinth to conduct an accurate inspection (i.e., active concealment of the truth). Either situation plausibly establishes the scienter of Andritz.

Finally, the Defendant claims that the Plaintiff has failed to adequately plead that Andritz actively concealed the truth. " 'Active concealment of the truth' connotes steps taken by a defendant to hide the true state of affairs from the plaintiff." *Kezer*, 742 A.2d at 905. The FAC alleges that Andritz did take steps to hide the 26LM presses' overheating problems. In particular, the Plaintiff alleges that Andritz dispatched technicians who falsely stated that the presses were safe to use. Whether the technicians knew about the overheating problems or Andritz withheld that information from them is not important at this point. In either scenario, I can reasonably infer from the statements of Andritz's technicians—coupled with Andritz's alleged knowledge of the potential safety problems—that Andritz acted with the intent to conceal the true state of affairs from Corinth.[4]

Corinth has pleaded sufficient facts to establish all necessary components of a fraud claim under Maine law.

---

[4]    Indeed, the FAC alleges that, although Mr. Hasselbring prepared a report after his August 2018 inspection and promised to provide this report to Corinth, Andritz has refused to provide the report to Corinth, suggesting that discovery might reveal additional information known to Andritz that was not disclosed to Corinth. FAC ¶¶ 25, 27 (ECF No. 11).

## II.      Breach of the Implied Warranty of Merchantability

The Defendant next argues that Count III, the Plaintiff's claim for a breach of the implied warranty of merchantability, should be dismissed because it is outside of the statute of limitations. Def.'s Mot. 3–7. Such a claim generally expires four years after a product is delivered. 11 M.R.S. § 2-725. However, in cases involving fraudulent concealment, Maine allows statutes of limitations to be tolled until the alleged victim of the fraud discovers the potential for a cause of action. 14 M.R.S. § 859. In such a circumstance, the statute of limitations is six years from the time of discovery. *Id.* Fraudulent concealment in the context of § 859 is analyzed in the same way as a standalone cause of action for fraud. *See Brawn v. Oral Surgery Assocs.*, 819 A.2d 1014, 1026 (Me. 2003). Because I conclude that the Plaintiff has pleaded a plausible claim for fraud, it necessarily follows that this plausible fraud could also toll the statute of limitations for Count III. Thus, the statute of limitations might not have begun to run on this claim until Corinth discovered the alleged defects in the presses after the fire in September of 2018.

## III.      Punitive Damages

"[P]unitive damages are not a separate cause of action but, rather, an element of damages in, and thus wholly derivative of," a plaintiff's substantive claims. *Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 34 (1st Cir. 2007). Thus, at the motion to dismiss stage, a plea for punitive damages will generally rise and fall with the pleaded substantive claims. *See Pan Am Sys., Inc. v. Hardenbergh*, 871 F. Supp. 2d 6, 18–19 (D. Me. 2012).

In any event, to be entitled to punitive damages, a plaintiff must prove by clear and convincing evidence that a defendant acted with either actual malice (i.e., ill will) or legal malice (i.e., where the defendant's conduct "is so outrageous" that malice can be implied). *Tuttle v. Raymond*, 494 A.2d 1353, 1354, 1361 (Me. 1985). The Defendant argues that punitive damages are not permitted here, as a matter of law, because this is a "garden-variety product liability" case. Def.'s Mot. 19. However, the Defendant cites no authority that punitive damages cannot be awarded in a "garden-variety" product liability case. Instead the Defendant cites to two distinguishable cases where a claim for punitive damages was dismissed at the motion to dismiss stage. One is a Magistrate Judge's report and recommendation that was never adopted. *See Barrett v. Bergen*, No. 99-239-P-C, 2000 WL 761789, at *1 (D. Me. Feb. 14, 2000).[5] The other only considered the viability of punitive damages on a trespass claim after the plaintiff's fraud claim was dismissed. *See Werman v. Malone*, 750 F. Supp. 21, 23–25 (D. Me. 1990). The suitability of punitive damages in this case is more appropriately considered at a later stage.

---

[5]     A stipulation of dismissal was entered within days of the report and recommendation being issued. *See Barrett v. Bergen*, No. 99-239-P-C, ECF No. 25 (D. Me. Feb. 18, 2000).

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendant's motion to dismiss (ECF No. 17).


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 17th day of September, 2020.