UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CORINTH PELLETS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 1:20-cv-00082-NT |
| | ) |
| ANDRITZ, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S MOTION TO STRIKE**

Before me is the Plaintiff's motion to strike the Defendant's expert disclosures because they were served after the deadline imposed in the scheduling order. Corinth Pellets, LLC's Mot. to Strike Andritz, Inc.'s Late-Served Expert Disclosures ("**Mot. to Strike**") (ECF No. 79). For the reasons stated below, the motion to strike is **DENIED**.

## BACKGROUND

### I. The Case So Far

In 2013, Plaintiff Corinth Pellets, LLC ("**Corinth**") acquired a wood fuel pellet mill in Corinth, Maine. First Am. Compl. ("**FAC**") ¶¶ 1, 6 (ECF No. 11). Corinth also acquired the equipment within the mill, including three 26LM pellet presses manufactured by Defendant Andritz, Inc. ("**Andritz**"). FAC ¶¶ 6–7, 57. The next year, Corinth purchased a fourth pellet press from Andritz. FAC ¶ 8. Over the next few years, Corinth purchased parts for the pellet presses from Andritz and Andritz inspected and serviced the pellet presses. FAC ¶¶ 14, 24–25.

In September of 2018, the mill suffered a catastrophic fire that forced it to cease operations. FAC ¶ 19. An investigation determined that the fire originated in one of the pellet presses due to a mechanical failure. FAC ¶¶ 45, 47.

The Plaintiff filed its Complaint in March of 2020, Compl. (ECF No. 1), and subsequently filed its First Amended Complaint. Corinth asserts five counts under Maine law: (1) negligence, (2) strict liability, (3) breach of the implied warranty of merchantability, (4) fraud, and (5) punitive damages. FAC ¶¶ 56–103. In September of 2020, I denied the Defendant's Motion to Dismiss three counts of the FAC. *Corinth Pellets, LLC v. Andritz, Inc.*, No. 1:20-cv-00082-NT, 2020 WL 5578412, at *1 (D. Me. Sept. 17, 2020) (ECF No. 20). Since then, the parties have engaged in a lengthy period of discovery.

## II.   Expert Disclosures and Motion to Strike

On August 23, 2022, I held a Local Rule 56(h) pre-filing conference with the parties, where I emphasized the need for the case to move forward. Local Rule 56(h) Pre-Filing Conference Report & Order ("**Rule 56(h) Order**") (ECF No. 74). Andritz agreed to designate any experts on damages by October 13, 2022, and to disclose any causation/design experts by October 27, 2022. Joint Proposed Disc. Deadlines & Summ. J. Briefing Schedule ("**Joint Proposed Schedule**") 1 (ECF No. 73). Corinth then had until November 11 to depose the experts and complete discovery.[1] Joint Proposed Schedule 1–2; Rule 56(h) Order 4.

---

[1]   The scheduling order also set deadlines related to dispositive motions and *Daubert* and *Kumho* motions. The Defendant's deadline to file a motion for summary judgment was set for November 18, the Plaintiff had until December 16 to respond, and the Defendant had until December 30 to file a reply to the Plaintiff's opposition. Local Rule 56(h) Pre-Filing Conference Report & Order ("**Rule 56(h)**

2

Andritz missed both deadlines to serve its expert designations. On October 28, Andritz's counsel emailed Corinth's counsel asking for a one-week extension to serve its liability (causation/design) expert designations. Mot. to Strike Ex. A (ECF No. 79-1). Counsel for Corinth refused the extension request, noting that the schedule was too tight to accommodate further delay and still finish briefing the dispositive motions by the end of the year. Mot. to Strike Ex. A. Andritz did not respond. Mot. to Strike 3.

In the early hours of November 8, 2022, twelve days after the causation/design expert designation deadline, Andritz sent two emails to disclose its causation/design experts.[2] One included a disclosure pursuant to Rule 26(a)(2)(C) for Tim Duncan, the Defendant's design expert. Mot. to Strike Ex. C (ECF No. 79-3). The other was an email attaching a written investigative report signed by two engineers, Michael Hanks and Amy Gray. Mot. to Strike Ex. B (ECF No. 79-2). The report does not state the compensation paid, who will testify, or the exhibits that will be used to summarize any opinions. Mot. to Strike 3. Andritz since has clarified that Michael Hanks is its retained cause and origin expert. *See* Resp. in Opp'n to Pl.'s Mot. to Bar ("**Def.'s Opp'n**") 1 (ECF No. 80)

On November 8, the Plaintiff filed this motion to strike the Defendant's late-served and incomplete expert disclosures. It asks to strike the disclosures, preclude

---

**Order**") 4 (ECF No. 74) . Additionally, the deadline for *Daubert* and *Kumho* motions was set for December 7, 2022, the deadline to file oppositions to those motions was set for December 28, 2022, and the deadline to file replies was set for January 11, 2023. Rule 56(h) Order 4–5.

[2]   The Defendant has not served a damages expert designation and has not tried to do so.

3

Andritz's experts from offering testimony, and award Corinth its attorneys' fees in preparing this motion and any additional relief the Court deems just and proper. Mot. to Strike 7–8. In the alternative, Corinth asks for the parties to go directly to trial in the first quarter of 2023, forgoing summary judgment. Corinth's Reply in Supp. of Mot. to Strike ("**Pl.'s Reply**") 4 (ECF No. 81).

For its part, Andritz hopes for a sanction that allows the case to be heard on the merits. Andritz suggests entering an adjusted scheduling order to give Corinth extra time to prepare its depositions and filings. Def.'s Opp'n 11–12.

On November 16, I entered an order reserving ruling on the motion to strike until after the parties attended a judicial settlement conference that was scheduled for December 5, 2022.[3] Order (ECF No. 82). On December 5, Judge Nivison held the conference but granted a continuance. *See* Minute Entry (ECF No. 84). On December 12, I held a telephone conference with counsel to discuss the pending motion to strike in light of the continued settlement efforts. I asked Andritz to notify the Court as to how it intended to proceed given that I was considering two possible sanctions for its late-served expert disclosures: Andritz could (1) withdraw its summary judgment motion and retain its experts for trial; or (2) proceed with summary judgment but strike its experts. Minute Entry (ECF No. 89). On December 19, the Defendant filed a status report explaining that it would prefer to retain its expert witnesses for trial

---

[3]  I also required the Defendant to abide by the existing deadlines for filing its summary judgment and *Daubert/Kumho* motions and said I would address any deadline extensions necessary for the Plaintiff if the parties did not settle. Order (ECF No. 82). The Defendant complied with its deadlines and filed a motion for summary judgment on November 18 (ECF No. 83) and filed its *Daubert/Kumho* motion on December 7 (ECF No. 87).

and withdraw its summary judgment motion. Joint Status Report and Request for Trial Date (ECF No. 91).

## LEGAL STANDARD

In general, parties must disclose the identities of any witnesses they may use at trial to present evidence. Fed. R. Civ. P. 26(a). When those witnesses are experts, Rule 26 further requires parties to accompany the disclosure with a written report. Fed. R. Civ. P. 26(a)(2)(B). This report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them," "any exhibits that will be used to summarize or support them," and "a statement of the compensation to be paid for the study and testimony in the case" among other requirements. Fed. R. Civ. P. 26(a)(2)(B)(i), (iii), (vi). Under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

## DISCUSSION

Corinth argues that Andritz's expert disclosures should be stricken. Mot. to Strike 1. Andritz does not dispute that sanctions are appropriate under Rule 37. Def.'s Opp'n 1–2. The question is which sanctions should be imposed.

District courts have broad discretion in deciding which Rule 37 sanctions are appropriate for Rule 26 violations. *See Laplace-Bayard v. Batlle*, 295 F.3d 157, 162 (1st Cir. 2002). "[A]lthough [Rule 37] sanctions can vary depending on the

circumstances, 'the baseline rule is that the required sanction in the ordinary case is mandatory preclusion.' " *Harriman v. Hancock Cnty.*, 627 F.3d 22, 29 (1st Cir. 2010) (quoting *Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este*, 456 F.3d 272, 276 (1st Cir. 2006)). The factors used to analyze whether preclusion is appropriate are:

> (1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's adverse effects—e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket.

*Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 78 (1st Cir. 2009). "The burden is on the party that has failed to comply with discovery deadlines to establish that his failure is harmless or substantially justified." *U.S. Bank Nat'l Ass'n v. James*, Civil No. 09-84-P-JHR, 2010 WL 1416126, at *6 (D. Me. Apr. 5, 2010).

The history of the litigation favors an alternative to precluding the expert disclosures. This factor involves considering whether the party has missed other deadlines or if there is evidence of calculated gamesmanship to get an edge over the other party. *See Esposito*, 590 F.3d at 79; *Harriman*, 627 F.3d at 31; *Santiago-Díaz*, 456 F.3d at 277. The parties have not claimed that Andritz has missed other deadlines. Although Corinth claims that the late disclosure was a "classic act of litigation gamesmanship," Pl.'s Reply 2, it has not presented evidence to support that claim. Andritz sought an extension from Corinth the day after the causation/design expert designation deadline passed, made efforts to prepare the report, and served the partial disclosures within two weeks. *See* Mot. to Strike 3; Def.'s Opp'n 7–8. This

6

conduct is less egregious than the foot-dragging that has been found to weigh against defendants in other cases. *See, e.g.*, *Harriman*, 627 F.3d at 31 (plaintiff missed multiple deadlines); *Santiago-Díaz*, 456 F.3d at 277 (referencing the plaintiff's "obvious and repeated" disregard for the court's deadlines); *Klinges v. Pomerleau*, No. 2:19-cv-00418-NT, 2022 WL 1487036, at *6 (D. Me. May 11, 2022) ("First, the history of litigation shows that discovery closed on December 27, 2021, and [defendant] waited two months to file its supplemental designation.").

The second factor, Andritz's need for the precluded evidence, weighs strongly in favor of not striking the expert disclosures. In *Esposito*, the First Circuit decided that it was an error to exclude the plaintiff's only expert in a products liability case when the plaintiff did not meet the deadline to designate him. *Esposito*, 590 F.3d at 74, 78. The court noted that preclusion would have been tantamount to dismissal and there was no evidence that the plaintiff previously missed deadlines or sought to gain a calculated advantage. *Id.* at 78–80. Thus, even though there was not a compelling justification for missing the deadline and the late disclosure prejudiced the other party and impacted the court's docket, the First Circuit held that preclusion was not justified. *Id.* at 78–79.

This case is similar to *Esposito*. The witnesses are essential to this products liability litigation because they will discuss the cause and origin of the fire and whether the product was defective and unreasonably dangerous. *See* Def.'s Opp'n 4–5. Like in *Esposito*, excluding Andritz's experts would likely be tantamount to deciding the case in Corinth's favor. Moreover, as discussed above, there is no

7

evidence that the Defendant has repeatedly or purposefully missed its deadlines. Although the remaining factors are mixed or weigh in favor of striking the expert designations, as in *Esposito*, this is not enough to overcome the strong presumption in favor of deciding cases on the merits. *See* 590 F.3d at 80.

The third factor involves the sanctioned party's justification for its late disclosure. Andritz does not provide a compelling justification. It argues that its counsel was overseas for a "half-vacation/half-work trip" from October 15 through 23, and only realized upon returning that Andritz's expert, Mr. Hanks, had not received the Plaintiff's expert deposition transcript. Def.'s Opp'n 7–8. As such, Mr. Hanks needed time to review it and could not complete his report until November 7. It also says that its other expert, Mr. Duncan, had his disclosure "essentially completed" by November 4, but counsel was waiting for the final "OK" before producing it. Def.'s Opp'n 8. It is unclear why the Defendant was unable to check on a deadline while on a "half-work" trip or how having a disclosure "essentially completed" a week after the deadline passed justifies the late disclosure. *See* Pl.'s Reply 2. Further, the designation that was provided was incomplete. This factor weighs in favor of excluding the expert testimony.

The opponent-party's ability to overcome the late disclosure's adverse effects also weighs in favor of excluding the expert designations. Corinth explains in detail the problems it faces because of the late disclosure. It received the expert designations on November 8, three days before its deadline to depose the experts. Mot. to Strike 5. It says that if the discovery deadline were extended, it would have to contend with

8

responding to Andritz's voluminous summary judgment motion in addition to taking the depositions, which would be needed to prepare the summary judgment opposition. Mot. to Strike 5–6. Moreover, Corinth points out that its counsel will have difficulty finding time to take the depositions and prepare the summary judgment opposition because they scheduled matters in other cases based on the original deadlines in this case. Pl.'s Reply. As such, Andritz's late disclosure has significantly prejudiced Corinth.

The final factor to consider is the impact on the Court's docket. This also weighs in favor of suppression. "Whenever a party, without good cause, neglects to comply with reasonable deadlines, the court's ability to manage its docket is compromised." *Santiago-Díaz*, 456 F.3d at 277. I made it abundantly clear at the conference on August 23, that I wanted the summary judgment briefing finished by the end of the year so that the case could be tried in the first quarter of 2023. Extending discovery and deadlines to give Corinth adequate time to respond to Andritz's summary judgment motion would delay the case even further, and this case is already approaching a three-year anniversary. *See Klinges*, 2022 WL 1487036, at *6.

On balance, some sanction is appropriate. As noted above, at the December conference with counsel, I gave Andritz a choice of sanctions: either keep your experts but forego the summary judgment process to keep the case moving or I will exclude the late-designated experts and go forward with summary judgment. Andritz has indicated that it would prefer to retain its expert witnesses for trial and withdraw its

summary judgment motion. Joint Status Report and Request for Trial Date. I find this to be a fair resolution.

## CONCLUSION

For the reasons stated above, the Court DENIES the Plaintiff's Motion to Strike. The case has been placed on the trial list for February, and the parties are directed to meet and confer to establish a new deadline for the Plaintiff to depose the Defendant's experts. The Defendant is directed to withdraw its summary judgment motion and correct its expert disclosure for Mr. Hanks to conform with Rule 26 by December 30.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 22nd day of December, 2022.